IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MICHAEL BACHICHA, an individual
and SUSAN STANOJEVIC, an
individual,

      Plaintiffs,

v.

BOARD OF EDUCATION of the Albuquerque
Public Schools, PAULA MAES, in her individual
and official capacity as a member of the Board,
and WINSTON BROOKS, in his individual and
official capacity as Superintendent of Albuquerque
Public Schools,

      Defendants,

COMPLAINT FOR DAMAGES FOR
UNLAWFUL DISCRIMINATION,  RETALIATION
<u>VIOLATIONS OF CIVIL RIGHTS AND STATE LAW CLAIMS</u>


      COME NOW  the Plaintiffs, Michael Bachicha and Susan Stanojevic, by and

through their attorneys of record, STIFF, KEITH AND GARCIA, LLC (John S. Stiff, Esq.)

and for their Complaint, state as follows:

1.  That the jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec.s 1331,

2.  42 U.S.C. Sec. 1983 and 1988, the First, Fourth and Fourteenth Amendments to

    the United States Constitution [Free Speech, Procedural and Substantive Due

    Process and Equal Protection],  42 U.S.C. Secs. 2000e-2000e-17, as amended

    by the Civil Rights Act of 1991 [hereinafter referred to as "Title VII"], 20 U.S.C.

    Sec. 1681, et.seq. [hereinafter referred to as"Title IX"],  the New Mexico Human

    Rights Act, 28-1-1, et.seq and other New Mexico state law claims.

3.  That the Plaintiff Michael Bachicha is and was at all times material to the

4.  allegations in this Complaint a resident of Sandoval County, New Mexico, a male
    and the principal of first Sandia High School and then the LBJ Middle School in
    the Albuquerque Public Schools.

5.  That the Plaintiff, Susan Stanojevic, is and was at all times material to the

6.  allegations in this Complaint a resident of Bernalillo County, New Mexico, a
    female and the Assistant Principal for Curriculum at Sandia High School and then
    the Assistant Principal for Buildings and Grounds and the Assistant Principal for
    Tenth and Eleventh Grades at the Eldorado High School.

7.  That pursuant to New Mexico statute the Defendant Board is and was
    authorized to accept federal aid in the operation of the Albuquerque Public
    Schools.

8.  That, upon information and belief, at all times material to the allegations in this

9.  Complaint the Defendant Board accepted federal financial assistance in the
    operation of the Albuquerque Public Schools.

10. That, upon information and belief, at all times material to the allegations in this

11. Complaint, the Defendant, Paula Maes, an individual, [hereinafter referred to as
    Defendant Maes] was and is a resident of Bernalillo County New Mexico and a
    member of the Defendant Board.

12. That, upon information and belief, at all times material to the allegations in this

13. Complaint, the Defendant Winston Brooks, an individual, [hereinafter referred to
    as "Defendant Brooks"] was and is a resident of Bernalillo County New Mexico

and employed by the Defendant Board as the Superintendent of the Albuquerque

Public Schools.

14. That the Defendant Board had supervisory power over the Defendants Maes

15. and Brooks.

16. That the supervisory power over the Defendant Brooks included the authority

17. to discipline Brooks in a manner up to and including termination.

18. That all Defendants are "persons" within the meaning of 42 U.S.C. Sec. 1983.

19. That the acts and failures to act of Defendants Board, Maes and Brooks were

20. done under color of state law.

21. That the unlawful acts complained of herein occurred in Bernalillo County,

22. New Mexico.

23. That on August 12, 2009, Ms. Stanojevic filed a Charge of Discrimination with

24. the Equal Employment Opportunity Commission [hereinafter "EEOC"] alleging

discrimination on the bases of sex and retaliation against the Defendant Board

and its employees.

25. That on April 30, 2010 the U.S. Department of Justice issued a Notice of Right to

Sue to Ms. Stanojevic.

26. That on August 13, 2009, Mr. Bachicha filed a Charge of Discrimination with the

EEOC alleging discrimination based on retaliation against the Defendant Board

and its employees.

27. That on April 30, 2010,  the U.S. Department of Justice issued a Notice of Right

to Sue to Mr. Bachicha.

28. That this court has jurisdiction over the subject matter and the parties to this action.

29. That venue is proper in this Court.

## FACTS COMMON TO ALL COUNTS

30. That Mr. Bachicha began his tenure as the Principal of Sandia High School [hereinafter "SHS"] in the 2004-2005 school year.

31. That Ms. Stanojevic began her tenure as the Assistant Principal for Curriculum [hereinafter referred to as "Curriculum Assistant"] of SHS beginning with  the 2005-2006 school year.

32. That Mr. Bachicha and Ms. Stanojevic continued in their respective positions as Principal and Curriculum Assistant through the 2008-2009 school year.

33. That shortly after Ms. Stanojevic assumed her position as Curriculum Assistant, she was approached by SHS Department Chairs who asked that the administration look into a revised schedule change process.  That the Department Chairs reported the concerns of the faculty at large that they desired a student schedule change policy that would give the faculty, including Department Chairs, a voice in the process and that would eliminate unilateral decision making in this regard.

34. That during the 2006-2007 school year a revised student schedule change policy, which required consultation with the faculty was outlined and theoretically in effect.

35. That in December, 2008, Ms. Stanojevic and another Assistant Principal at SHS met with an SHS employee regarding his repeated failure to  adhere to the

revised student schedule change policy.  That this employee [hereinafter referred to as "disgruntled employee # 1"] was reprimanded by Ms. Stanojevic for this insubordination.  That "disgruntled employee # 1" slammed his fists on the table, pointed his finger in Ms. Stanojevic's face and stated "I'm going to get your for this.  This isn't over."

36. That sometime thereafter "disgruntled employee # 1" appealed to Defendant Maes, in her capacity as a member of the Defendant Board, regarding his displeasure with Ms. Stanojevic.

37. That in mid-April, Mr. Bachicha received a call from Defendant Maes regarding an alleged complaint that Ms. Stanojevic was "unusually inflexible" with parents.

38. That sometime in April or early May,  2009, Defendant Brooks had an hour long meeting with "disgruntled employee #1"

39. That on April 17, 2009, Mr. Bachicha met with Associate Superintendent for Secondary Education, Eddie Soto.  That during this meeting, Mr. Bachicha told Mr. Soto that he, Bachicha, believed that Ms. Stanojevic was ready to be a principal.  That Associate Superintendent Soto, nodded toward the office of Defendant Brooks and said "that would be a tough sell up here."

40. That on May 14, 2009, the SHS Commencement Ceremony was held.

41. That on May 15, 2009, Mr. Bachicha received a call from Associate Superintendent Soto.  Soto advised Mr. Bachicha that there were "more issues" regarding Ms. Stanojevic.  Soto reported that he had been advised by Defendant Maes that "ten teachers" had approached her at the SHS commencement ceremony the night before and told her that Mr. Bachicha was taking a

"backseat" and allowing Ms. Stanojevic to "run the school."  Soto told Mr.

Bachicha that he wanted Bachicha to come in for a meeting.

42. That when Mr. Bachicha arrived at Soto's office, he was surprised to find that

Defendant Brooks was also there.

43. That Brooks repeated the allegation that Mr. Bachicha had taken a "backseat" in

the administration of SHS and was allowing Ms. Stanojevic to run the school.

When  Mr. Bachicha assured Defendant Brooks that that was not the case,

Brooks then stated that "she [Ms. Stanojevic] screwed [former APS

Superintendent] Brad Allison and slept her way to the top."

44.  That Mr. Bachicha was appalled by Defendant Brooks' comment and began to

suspect that this attitude on the part of Brooks was the reason Soto had indicated

the promotion of Ms. Stanojevic to a principal's position would be a "tough sell" to

Brooks.

45. That following the meeting, Mr. Bachicha called Soto.  He told Soto that he was

very concerned about Brooks's comments about Ms. Stanojevic.  Mr. Bachicha

stated that he thought Brooks' comment was a serious charge and that he

needed to tell Ms. Stanojevic.  Soto confirmed that Bachicha should tell Ms.

Stanojevic.

46. That same day Mr. Bachicha met with Ms. Stanojevic and her husband, a

teacher and girls' soccer coach at SHS, and told them what Brooks had said.

47. That  Ms. Stanojevic initially believed that Brooks' comment was based on

allegations made by "disgruntled employee #1" who she assumed was

attempting to make good on his threat to "get her" by slandering her to Defendant Brooks.

48. That on May 19, 2009, Ms. Stanojevic filed a complaint with the APS Office of Equal Opportunity ["OEO] against "disgruntled employee # 1" .  Ms. Stanojevic stated in the complaint that she was being subjected to sexual harassment and retaliation by "disgruntled employee #1" who was attempting to justify his own insubordination and undermine her authority by telling Defendants Maes and Brooks, that Mr. Bachicha had turned over the school to her and that the only reason she was in administration was because she had "screwed" a former APS Superintendent and "slept her way to the top."  In support of her complaint, Ms. Stanojevic identified Defendants Maes and Brooks as witnesses.

49. That on June 2, 2009, Mr. Bachicha received a telephone call on his cell phone from Soto.  Soto asked Mr. Bachicha whether he, Bachicha, knew that Ms. Stanojevic had filed a complaint with the APS OEO.  Mr. Bachicha advised Soto that he was aware of that fact.  Soto replied something to the effect of "Well, I guess she has to do what she has to do."

50. That on June 3, 2009, Mr. Bachicha received a favorable evaluation from Soto.

51.  That in a Letter of June 4, 2009 to Ms. Stanojevic,  the APS OEO reported that the office "could not adequately substantiate the allegations" that she was subjected to sexual harassment and retaliation for participating in a protected activity.

52. That on June 5, 2009, at a district meeting of administrators, Defendant Brooks walked up to Mr. Bachicha and stated "your curriculum assistant made a serious

error in judgment by filing an [APS OEO] complaint and naming me and Paula

Maes in it."  Brooks also told Bachicha that Defendant Maes "used to be your

biggest fan."

53. That Mr. Bachicha advised Ms. Stanojevic of this threat.

54. That on June 18, 2009, Mr. Bachicha and Ms. Stanojevic meet with Soto.  Mr.

Bachicha and Ms. Stanojevic asked Soto  if they could speak with Defendant

Maes since she had been receiving misinformation from   "disgruntled employee

# 1".  Soto stated that they could not speak with Defendant Maes as Defendant

Brooks had given "a clear directive that employees are not to contact Board

members under any circumstances."  Soto also stated that Ms. Stanojevic had an

"excellent reputation".  He stated that he was familiar with "all the great work" she

did at the APS Service Center.  Soto continued that Ms. Stanojevic would be

considered a "top candidate" for upcoming principalships and that   she had

nothing to worry about.

55.  That on June 19, 2009, Mr. Bachicha was called in to a meeting with Soto and

presented with a letter stating he was being placed on administrative leave

pending the completion of an internal audit investigation.  Mr. Bachicha was

given no information regarding the subject of the audit.

56. That on leaving Soto's office, Mr. Bachicha was met by two APS police Officers

who escorted him from the building.  One of the officers followed Mr. Bachicha to

his home and took possession of his APS laptop.

57.  That on June 20, 2009, an article appeared in the Albuquerque Journal naming

Mr. Bachicha and stating that he had been placed on leave due to allegations of

"misconduct".  That the allegation that Mr. Bachicha was placed on leave for

alleged "misconduct" was provided by the Defendants, was false and was known

by them to be false at the time they provided it.

58. That on June 22, 2009, Defendant Brooks and an entourage including Soto,

Monica Armenta is Executive Director of APS Communications, Cardinal Rieger

Instructional Coordinator for High Schools, Tom Ryan is Chief Information

Officer, Brad Winter is Chief Operations Officer, APS Chief of Police Bill Reid and

Defendant Maes held a meeting at SHS for faculty and staff at which Defendant

Brooks alleged five reasons a/k/a "five points" for the placement of Mr. Bachicha

and an Assistant Principal (not Ms. Stanojevic) on leave.  These five points

consisted of: 1) the Assistant Principal's alleged failure properly to complete a

facilities usage form for the use of the SHS building and grounds for filming; 2) a

problem with secretary overtime compensation; 3) the fact that Mr. Bachicha's

step-daughter and the child of an SHS faculty member had been selected for

scholarships; 4) an allegation that Mr. Bachicha's step-daughter while a student

at SHS had been accorded special treatment with respect to drill team fines; and

5) a "breach of confidentiality".  That Defendant Maes gave an emotional speech

about how she wanted to "fix whatever is wrong here."

59.  That Defendants knew at the time of the meeting that each and every one of the

"five points" was false and was not the reason that Mr. Bachicha was placed on

leave.

60.  That the first point, an alleged failure by the Assistant Principal to complete a

building usage form was in reference to a dispute between an SHS assistant

principal and the Defendant Board's Operations Office  regarding whether the assistant principal had failed to submit the form or whether the Operations Office office had lost the form.  The failure properly to complete a building usage form was a minor paper work error.  That at about the same time a then assistant principal at El Dorado High School also failed to complete a building usage forum.  That assistant was promoted to a principal ship.  No disciplinary action was taken against the El Dorado Principal.

61. That the second point, an alleged problem with secretary overtime compensation,  referred to an incident which occurred on or about April, 2009, when Mr. Bachicha was informed by an SHS staff member that she believed  the Assistant Principal had erred in the approval of and computation of overtime for certain secretaries.  When Mr. Bachicha learned of the error, he contacted Soto, who directed him to Karen Rudys, then APS Director of Staffing and Employee Relations, who directed him to Nancy Duran, the HR Specialist in charge of clerical workers.  Ms. Duran directed Mr. Bachicha in the particulars of how to correct the error.  Mr. Bachicha followed Ms. Duran's instructions and this error was resolved long before Mr. Bachicha was placed on leave.

62. The third and fourth points were similarly ill taken.     APS permits administrators and faculty to serve at schools attended by their children and step children.  Mr. Bachicha's stepdaughter , while a student at SHS, was awarded a scholarship and resolved certain fines,  all in accordance with standard operating procedure.

63. The fifth point, the alleged breach of confidentiality was an allusion to the real reason Mr. Bachicha was placed on leave i.e. the fact that he opposed the

unlawful discrimination he reasonably believed he witnessed by telling Ms.
Stanojevic of the discriminatory and defamatory remarks Brooks made about her
and  thereby facilitating her objecting to the same through the formal APS OEO
process. There was nothing confidential about the communication  from
Defendant Brooks to Mr. Bachicha and witnessed by Soto that Ms. Stanojevic
"screwed [former APS Superintendent] Brad Allison and slept her way to the top."

64.  That on June 22 or 23, 2009, Mr. Bachicha met with APS Principals' Association
[hereinafter "APSPA"] Executive Director Gary Atwood.  That at that time Atwood
was not an APS employee.  That this meeting with Atwood was the first time
Bachicha was told of the "five points".

65.  That on June 25, 2009, the Albuquerque Journal published an article which
identified Mr. Bachicha by name and again stated that he was placed on leave
based on "allegations of employee misconduct."  That the allegation that Mr.
Bachicha was placed on leave for alleged "misconduct" was based on
information provided by the Defendants, was false and was known by them to be
false at the time they provided it.

66. That on July 2, 2009, Mr. Bachicha met with Brooks and Soto and was informed
that he was being demoted to a Principalship at LBJ Middle School.    Brooks
admitted there was no validity to points 1-3 of the "five points".  Brooks did not
disagree that there was no validity to point 4.

67.  That when they go to  point 5 the "confidentiality issue," Bachicha reiterated that
all he had done was advise Ms. Stanojevic of Brooks' statement regarding Ms.
Stanojevic that  "she screwed Brad Allison and slept her way to the top." Brooks

stood up, clenched his fists and said to Mr. Bachicha "I don't trust you." Brooks

then claimed he "didn't remember" making that comment. Bachicha then turned

to Soto, who witnessed this exchange and reminded Soto that Soto had agreed

that Bachicha should tell Ms. Stanojevic what Brooks said about her. At this

point, Soto had tears in his eyes.

68. That although Defendants have at all times known that the allegations of

employee misconduct on Mr. Bachicha's part were false they have maliciously

failed and refused to acknowledge this fact publicly.

69. That on July 3, 2009, an article appeared in the Albuquerque Journal stating

"[t]he internal investigations at [SHS] are ongoing, but at this stage the

allegations are not substantial enough to keep Mr. Bachicha . . . from continuing

their administrative careers with the district". That the allegation that the internal

investigation was ongoing was provided by the Defendants, was false and was

known by them to be false at the time they provided it.

70. That on July 7, 2009, an article appeared in the Albuquerque Journal again

referring to Mr. Bachicha as having been transferred to lead the LBJ Middle

School "after an investigation into allegations of employee misconduct, including

circumstances regarding scholarships awarded to his stepdaughter and another

administrator's child" . That the allegation that Mr. Bachicha was placed on

leave for alleged "employee misconduct", including circumstances regarding

scholarships awarded to his stepdaughter and another administrator's child was

provided by the Defendants, was false and was known by them to be false at the

time they provided it.

71. That on August 5, 2009, while her 2009-2010 contract was in effect, Ms. Stanojevic was summarily transferred to a position as Assistant for Building and Grounds at El Dorado High School.  That although her salary remained the same, the substantial difference in the two jobs and the more limited opportunities for promotion from the latter position made the "transfer" an effective demotion.

72.  That although Ms. Stanojevic was told by Soto on August 5 that the transfer/demotion  was not punitive, the Defendants subsequently told the EEOC that the move was a disciplinary action in response to Ms. Stanojevic's alleged failure to follow the directives of the new Principal at SHS as well as her alleged failure to follow certain district polices.  That the Defendants knew at the time this information was provided to the EEOC that it was false.

73. That Ms. Stanojevic was transferred and effectively demoted in retaliation for her opposition to the unlawful discrimination to which she was subjected and for her participation in the filing of a charge of discrimination.

74. That although Ms. Stanojevic has asked to be considered for both middle school principalships and the principalship of SHS since the filing of the OEO complaint and the subsequent Charge of Discrimination with the EEOC, the Defendant Brooks has repeatedly failed to promote her.

75. That Defendant Brooks has failed to promote Ms. Stanojevic in retaliation for her action in opposing the unlawful discrimination and participating in the filing of a charge of discrimination.

76. .That on July 16, 2010, Defendants cut Mr. Bachicha's pay.  That this pay cut together with the demotion has long term ramifications  for Mr. Bachicha in terms not only of pay but also retirement.

77.  That since the Defendants discriminatory and retaliatory actions against Mr. Bachicha he has been unable to obtain employment as a principal or superintendent outside the district.

78.  That the acts and failures to act of the Defendants were intentional, malicious, willful, reckless, wanton, fraudulent and in bad faith  thus entitling the Plaintiffs to punitive damages

79. That the Plaintiffs have suffered and continue to suffer damages in terms of lost compensation, back pay, front pay, lost promotions, injuries to their reputations, emotional distress for which they are entitled to recover compensatory, special and punitive damages, in an amount to be proven at trial.

COUNT I
UNLAWFUL DISCRIMINATION ON THE BASIS OF SEX
(TITLE VII)
(Plaintiff Stanojevic and All Defendants)

80. That the Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-79, supra., as if fully stated herein.

81.  That the Defendant Board is the employer of the individual Defendants and the Plaintiffs herein.

82. That Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation,

terms, conditions or privileges of employment because of such individual's . . .
sex."

83. That the acts and failures to act of the Defendants set forth above constitute
discrimination against Ms. Stanojevic on the basis of sex.

84. That the acts and failures to act of the Defendants set forth above constitute
discrimination against Ms. Stanojevic on the basis of sex in the form, inter alia, of
a hostile work environment.

85. That the discrimination on the basis of sex to which Ms. Stanojevic was
subjected as a result of the acts and failures to act of the defendants was severe
or pervasive such that it altered the terms or conditions of her employment and
created an abusive working environment.

86. That a reasonable person would find the working environment to which Ms.
Stanojevic was subjected, objectively sexually hostile or abusive.

87. That Ms. Stanojevic subjectively perceived her working environment as sexually
hostile or abusive.

88. That Ms. Stanojevic suffered tangible employment actions as a result of the
prohibited employment practices to which she was subjected by the Defendants.

89. That Ms. Stanojevic suffered damages in the form of a transfer with significantly
diminished job responsibilities and promotion potential, which was a de facto
demotion and has been repeatedly denied promotions all of which resulted in
damages to her.

90. That Ms. Stanojevic is entitled to recover compensatory, special and punitive damages as well as equitable relief in the form of back pay and front pay, in an amount to be proven at trial.

COUNT II.
RETALIATION
(TITLE VII)
(ALL PARTIES)

91. That the Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-90, supra., as if fully stated herein.

92. That Title VII makes it unlawful for an employer to discriminate against an individual because that individual "has opposed any practice made an unlawful employment practice" by the Act or because that individual "has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing" pursuant to Title VII.

93. That the Plaintiffs engaged in protected opposition to unlawful gender discrimination and otherwise participated in the investigation, proceeding or hearing of that charge.

94. That the Plaintiffs suffered actions at the hands of the Defendants, which actions a reasonable employee in their position would have found to be materially adverse and which actions would have deterred the reasonable employee from engaging in the protected opposition or participation.

95. That the Defendants took the materially adverse actions, the actions likely to deter protected opposition or participation, in retaliation for the Plaintiff's protected activity.

96. That the Plaintiffs suffered injuries as a result of the materially adverse actions, including their respective demotions, the failure to promote Ms. Stanojevic and the pay cut to Mr. Bachicha, injuries to their reputations and emotional distress, for which they are entitled to recover recover compensatory, special and punitive damages as well as equitable relief in the form of back pay and front pay, in an amount to be proven at trial.

COUNT III.
TITLE IX
RETALIATION
(ALL PARTIES)

97. That the Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-96, supra., as if fully stated herein.

98. That Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance".

99. That the Defendant Board is the recipient of federal funds and is subject to the constraints of Title IX.

100.    That when a funding recipient such as the Defendant Board retaliates against a person because he complains of sex discrimination, this retaliation constitutes intentional discrimination on the basis of sex in violation of Title IX.

101.    That the Plaintiffs complained of discrimination on the basis of sex.

102.    That the Defendants retaliated against the Plaintiffs because they complained of the Defendants unlawful discrimination on the basis of sex.

103.    That the Plaintiffs suffered injuries as a result of the Defendants' retaliatory actions, including their respective demotions, the failure to promote Ms. Stanojevic and the pay cut to Mr. Bachicha, injuries to their reputations and emotional distress, for which they are entitled to recover recover compensatory, special and punitive damages as well as equitable relief in the form of back pay and front pay, in an amount to be proven at trial.

COUNT IV
42 U.S.C. SEC. 1983
SUBSTANTIVE DUE PROCESS
FOURTEENTH AMENDMENT
(RIGHT TO BODILY INTEGRITY AND PRIVACY
(Defendants Brooks and Maes)

104.    That the Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-103 supra., as if fully stated herein.

105.    That the Plaintiff Stanojevic has a constitutionally protected right to bodily integrity and privacy protected under the substantive component of the Fourteenth Amendment's due process clause.

106.     That the sex discrimination, including sexually hostile work environment to

which Plaintiff Stanojevic was subjected as a result of the acts and failures to act

of the individual Defendants, set forth above, each of whom acted under color of

state law, deprived Plaintiff of her constitutionally protected right to bodily

integrity and privacy.

107.      That Plaintiff Stanojevic has been injured as a result of the deprivation of

her constitutionally protected right to bodily integrity and privacy, including her

demotion, the denial or her requests to be promoted, injury to her reputation,

emotional distress for which she is entitled to recover compensatory, special and

punitive damages as well as equitable relief in the form of back pay and front

pay, in an amount to be proven at trial.


                            COUNT V
                     42 U.S.C. SEC. 1983
                     EQUAL PROTECTION
                 (Defendants Brooks and Maes)

108.     That the Plaintiffs hereby incorporate by reference the allegations

contained in paragraphs 1-107, supra., as if fully stated herein.

109.     That the Fourteenth Amendment to the U.S. Constitution provides in

pertinent part, that no state shall deny to any person the equal protection of the

laws.

110.     That equal protection encompasses the right to be free from gender

discrimination that does not serve important governmental objectives.

111.    That at all times material to the allegations in the Complaint,  the clearly

established law in the Tenth Circuit was that sexual harassment of a person

under color of state law which did not serve an important governmental objective

was a violation of equal protection and actionable under Sec. 1983.

112.    That the acts and failures to act of the Defendants Maes and Brooks, set

forth above, were taken under color of state law.

113.    That the acts and failures to act of the Defendants Maes and Brooks were

intentional and were based on sex.

114.    That the acts and failures to act of the Defendants Maes and Brooks

resulted in tangible employment actions suffered by the Plaintiffs.

115.    That the Plaintiffs suffered injuries as a result of the Defendants'

retaliatory actions, including their respective demotions, the failure to promote

Ms. Stanojevic and the pay cut to Mr. Bachicha, injuries to their reputations and

emotional distress, for which they are entitled to recover recover compensatory,

special and punitive damages as well as equitable relief in the form of back pay

and front pay, in an amount to be proven at trial.


COUNT VI
42 U.S.C. SEC. 1983
FIRST AND FOURTEENTH AMENDMENTS
(FREE SPEECH)
(Defendants Brooks and Maes)

116.     That the Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-115, supra., as if fully stated herein.

117.     That the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, protects the right of public employees who speak out on matters of public concern to be free from retaliation.

118.     That the statements of the Plaintiff Bachicha set forth above were not made pursuant to his official duties but were made outside the course of performing his official duties.

119.     That his statements were contributions to the civic discourse.

120.     That the statements of the Plaintiff Bachicha  regarding the unlawful discriminatory conduct to which Plaintiff Stanojevic was being subjected by the Defendants were matters of public concern because they did not concern Mr. Bachicha's personal employment, they concerned Ms. Stanojevic  and had ramifications for every other female employee in the district who desired to rise through the ranks.

121.     That the retaliatory acts to which Mr. Bachicha has been subjected "would chill a person of ordinary firmness from speaking out in opposition to unlawful discrimination  activity in the future

122.      That the Plaintiff Bachicha has  suffered injuries as a result of the Defendants' retaliatory actions, including his demotion,  a cut in pay,  injury to his reputation and emotional distress, for which he is entitled to recover

compensatory, special and punitive damages as well as equitable relief in the

form of back pay and front pay, in an amount to be proven at trial.


COUNT VIII
42 U.S.C. SEC. 1983
PROCEDURAL AND SUBSTANTIVE DUE PROCESS
FOURTEENTH AMENDMENT
LIBERTY INTEREST IN GOOD NAME

123.     That Plaintiffs hereby incorporate by reference the allegations in

paragraphs 1 through  122 above as if fully stated herein.

124.      That Plaintiffs have constitutionally protected  interests in their good

names which interests are protected under the substantive component of the

Fourteenth Amendment's due process clause.

125.     That the Defendants published the aforementioned false statements of

fact concerning the Plaintiffs, which statements were defamatory in that they

caused wrongful and unprivileged injury to their reputations.

126.     That the Defendants knew the communications were false or negligently

failed to recognize that the statements were false or made the statements with

malice.

127.     That the communications caused actual injury to the Plaintiffs' reputation.

128.     That, in addition to injury to their reputations,  their property interests in

their positions as SHS Principal and Curriculum Assistant, respectively, during

the terms of their contracts,  were distinctly altered or extinguished during the

course of their contracts and ultimately officially removed from the recognition

and protection previously afforded.

129.    That, in addition to the injury to her reputation, Ms. Stanojevic has repeatedly been denied a promotion to a position as principal of a middle school.

130.    That, in addition to the injury to his reputation, Mr. Bachicha has been unable to secure a position as a principal or superintendent ouside the district of Defendants.

131.    That the Plaintiffs suffered injuries as a result of the Defendants' unconstitutional actions, including their respective demotions, the failure to promote Ms. Stanojevic and the pay cut to Mr. Bachicha, injuries to their reputations and emotional distress, for which they are entitled to recover recover compensatory, special and punitive damages as well as equitable relief in the form of back pay and front pay, in an amount to be proven at trial.

COUNT IX

42 U.S.C. SECTION 1983

DEFENDANT BOARD LIABILITY FOR CONSTITUTIONAL DEPRIVATIONS

132.    That Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through  131 above as if fully stated herein.

133.    That the constitutional deprivations to which the Plaintiffs were subjected as set forth in Counts IV through VII, supra., were the result of the Defendant Board's policy, practice or custom which was the moving force behind the deprivation of Plaintiffs' constitutionally protected rights.

134.    That the constitutional deprivations to which the Plaintiffs were subjected as set forth in Counts IV through VII, supra., were the result of actions taken by persons with final decision making authority for the Defendant Board.

135.    That the Defendant Board is liable for the constitutional deprivations to

which the Plaintiffs were subjected.

136.    That the Plaintiffs are entitled to recover compensatory and special

damages, and equitable relief, including back pay and front pay, from the

Defendant Board in an amount to be proven at trial.

COUNT X
NEW MEXICO HUMAN RIGHTS ACT
(Defendant Board)

137.    That Plaintiffs hereby incorporate by reference the allegations in

paragraphs 1 through 136 above as if fully stated herein.

138.    That the NMHRA prohibits discrimination on the basis of sex and

retaliation against those who complain about such unlawful discrimination.

139.    That, as stated above, the Defendants engaged in unlawful discrimination

and retaliation against the Plaintiffs.

140.    That the Plaintiffs suffered injuries as a result of the Defendants'

unconstitutional actions, including their respective demotions, the failure to

promote Ms. Stanojevic,  the pay cut to Mr. Bachicha, injuries to their reputations

and emotional distress, for which they are entitled to recover  compensatory,

special and punitive damages as well as equitable relief in the form of back pay

and front pay, in an amount to be proven at trial.


JURY DEMAND

COME NOW Plaintiffs and hereby demand a trial by a jury of their peers,

as allowed by law.

WHEREFORE, for the reasons set forth above, the Plaintiffs respectfully request that this Court enter judgment against the Defendants and in favor of the Plaintiffs and award Plaintiffs:

1) Compensatory, special and punitive damages (against the individual defendants) in an amount to be proven at trial;

2) Back pay, front pay and other equitable relief in an amount to be proven at trial.

3) Their costs, including reasonable attorneys, fees

4) Such other and further relief as the Court deems proper

Respectfully submitted,

STIFF, KEITH AND GARCIA, LLC


_____
John S. Stiff, Esq.
400 Gold Ave. S.W. Ste. 1300 W
Albuquerque, N.M.   87102
Tel.: (505) 243-5755
*Attorneys for Plaintiffs*