IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL BACHICHA, an individual
and SUSAN STANOJEVIC, and
individual,

    Plaintiffs,

v.                                                                                   Civ. No. 10-710 BB/LAM

BOARD OF EDUCATION of the Albuquerque
Public Schools, PAULA MAES, in her individual
and official capacity as a member of the Board;
and WINSTON BROOKS, in his individual and
official capacity as Superintendent of
Albuquerque Public Schools,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Motion for Summary Judgment on Brooks' and Maes' Qualified Immunity [Doc. 22]; and (2) Plaintiff Stanojevic's Motion to Stay Pursuant to Federal Rule of Civil Procedure, Rule 56(d) [Doc. 52].

Overview

Plaintiffs Michael Bachicha and Susan Stanojevic have sued their employer, the Board of Education of the Albuquerque Public Schools ("Board" or "APS"), and two Board members, Paula Maes and Winston Brooks. The lawsuit alleges various violations of Title VII, Title IX and 42 U.S.C. § 1983. Only the § 1983 individual liability claims against Brooks and Maes are at issue in this opinion.[1] Defendants filed their Motion for Summary Judgment, arguing that Brooks and Maes are entitled to qualified immunity on the § 1983

---

[1] Although sued in both their official and individual capacities under Section 42 U.S.C. § 1983, the official capacity claims were dismissed by Plaintiffs. *See* Doc. 39.

claims. After responding to the Motion, Plaintiffs argue they need additional discovery on the qualified immunity issue and have submitted a Rule 56(d) affidavit. The Court will first discuss the Motion for Summary Judgment and then discuss whether Plaintiffs are entitled to additional discovery.

## Standard for Summary Judgment on Qualified Immunity

"In an attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims, the Court [has] adopted an objective test to determine whether the doctrine of qualified immunity applies." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2nd 642, 645 (10th Cir. 1988).

Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir. 2006). If the law was not 'clearly established" at the time of the alleged infraction, the official is immune from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). An individual (or personal) capacity claim seeks monetary recovery payable out of the responsible official's personal finances. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). These individual liability defendants may assert the defense of qualified immunity. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 1978).

Once a defense of qualified immunity has been raised, the Court considers two questions: whether the conduct alleged violated a constitutional right and whether the law

was clearly established at the time. *Shrum*, 449 F.3d at 1138. Pursuant to *Pearson v. Callahan*, -- U.S.--, 129 S.Ct. 808 (2009), the Court may determine the two foregoing questions in any order. *See Christensen v. Park City Municipal Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

A plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). A plaintiff "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.1995) (citation omitted). "If the district court denies the defendant qualified immunity, the court should identify on the record the defendant's conduct that violated clearly established law." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir.1996) (citing *Albright*, 51 F.3d at 1535).

Only after a plaintiff has shown a violation of a clearly established constitutional or statutory right does the defendant assume the standard burden of a summary judgment movant of establishing that no material facts remain in dispute that would defeat his or her claim of qualified immunity. *Pueblo Neighborhood*, 847 F.2d at 646. Thus, unless and until the plaintiff is able to make the required showing that a defendant's conduct violated a "clearly established" right, the government official is properly spared the burden and expense of proceeding further.

Factual Background

Plaintiffs Michael Bachicha and Susan Stanojevic were employed by APS as the Principal and Assistant Principal for Curriculum, respectively, at Sandia High School (SHS). Complaint, ¶¶ 4 & 6. Bachicha began his tenure as principal at SHS in the 2004-05 school

year and Stanojevic began her tenure the next year. *Id.* at ¶¶ 30 & 31. They continued in those positions until the end of the 2008-09 school year. *Id.* at ¶ 32.

In mid-April of 2009, Bachicha received a call from Defendant Maes regarding complaints against Stanojevic for being "unusually inflexible with parents." *Id.* at ¶ 38. On April 17, Bachicha met with the Associate Superintendent for Secondary Education, Eduardo Soto. Bachicha told Soto that Stanojevic was ready to be a principal., but Soto -- indicating Defendant Brooks' office-- said that would be a "tough sell." *Id.* at ¶ 39.

On May 15 Bachicha received a call from Soto advising him that ten teachers had approached him and said that Bachicha was letting Stanojevic run the school; Soto told Bachicha that he wanted to meet with him. When Bachicha arrived, he found Brooks in Soto's office. When Bachicha assured them that Stanojevic was not running the school, Brooks said that Stanojevic had slept her way to the top by "screwing" former APS Superintendent Brad Allison. *Id.* at ¶¶ 41-43.

Following this meeting, Bachicha advised Soto that he was upset by Brooks' comment and wanted to advise Stanojevic; Soto concurred. *Id.* at ¶ 45. Bachicha then met with Stanojevic and her husband and told them what Brooks had said. Stanojevic believed the comment was based on a disgruntled employee's allegations and his threat to "get her." *Id.* at ¶¶ 46-47.

In May, Stanojevic filed a complaint with the APS Office of Equal Opportunity ("OEO") against the employee for sexual harassment and retaliation. She named Brooks and Maes as witnesses. In its June 4 letter to her, the OEO stated it could not substantiate the allegations. *Id.* at ¶¶ 48 & 51. Meanwhile, Soto informed Bachicha that Stanojevic had filed a charge and Bachicha received a favorable evaluation from Soto. *Id.* at ¶¶ 49-50.

On June 5, Brooks told Bachicha that Stanojevic had made a serious mistake by naming Brooks and Maes in her OEO complaint. Bachicha advised Stanojevic of Brooks' comment. *Id.* at ¶¶ 52-53. Bachicha and Stanojevic then met with Soto and requested a meeting with Maes because they believed she was getting misinformation from the disgruntled employee. Soto told them that Brooks had directed that no employee was to contact a Board member. He then told Stanojevic that she was an excellent candidate for principal and had nothing to worry about in that regard. *Id.* at ¶ 54.

On June 19, Bachicha was placed on administrative leave pending the results of an internal audit. He was escorted from the building by two APS police officers, who also accompanied him to his home to retrieve his APS laptop. The next day an article appeared in the <u>Albuquerque Journal</u> stating Bachicha had been placed on leave due to unidentified "misconduct." *Id.* at ¶¶ 55-57. Bachicha did not learn of the reasons for his being placed on leave until June 22 or 23, 2009.[2] On July 2, 2009 Bachicha met with Brooks and Soto and was informed that he was being demoted to being principal at LBJ Middle School. *Id.* at ¶ 66

Between June 22 and July 7, three more articles appeared in the <u>Albuquerque Journal</u> alleging the ongoing investigation into Bachicha's misconduct. *Id.* at ¶¶ 65, 69 & 70. On July 16, Bachicha's pay was reduced. *Id.* at ¶ 76.

---

[2] The five reasons given were (1) failure to fill out a facilities usage form; (2) a problem with secretaries' overtime compensation; (3) his step-daughter received a scholarship; (4) his step-daughter had been accorded special treatment; and (5) a "breach of confidentiality." Complaint, ¶ 58. The last reason, Bachicha believes, stemmed from his advising Stanojevic of Brooks' comment about her "sleeping her way to the top" with Brad Allison and her subsequent filing of a discrimination charge. Complaint at ¶ 63.

On August 5, 2009 Stanojevic was summarily transferred to a position as Assistant for Building and Grounds at Eldorado High School. *Id.* at ¶ 71. Her salary remains the same. *Id.*

## Discussion

### Due Process Claims

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"To prevail on either a procedural or substantive due process claim under 42 U.S.C. § 1983, 'a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.'" *Nichols v. Board of County Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). Constitutionally protected property interests "are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003).

The undisputed facts show that neither Plaintiff had a contract of continued employment with Albuquerque Public Schools (APS), but each Plaintiff had an expectation of employment for the 2008-2009 school year. *Calhoun v. Gaines*, 982 F.2d 1470, 1474 (10th Cir. 1992) (legitimate expectation based on policies, practices and procedures entitled to constitutional protection). Each Plaintiff still works for APS. At the end of the 2009 school year, Stanojevic was reassigned to an arguably less desirable position (from a

curriculum counselor to a buildings and facilities assistant manager at another school), but she retained the same rate of pay.  Complaint, ¶ 71. She also declined to apply for a principalship at another high school.  Bachicha, who was the principal at a high school, was placed on administrative leave following an audit which indicated some misconduct and he was then demoted to the principal of a middle school and received a cut in pay after the end of the 2009 school year.   Complaint, ¶¶ 55-57; 63; 65; 69-70; 71

Based on the foregoing facts, neither Plaintiff has alleged a protected property interest.  They have provided no facts from which the Court could determine an "implied contract" or "understanding" as required for a property interest beyond the 2008-2009 school year.  The Plaintiffs worked on a year-to-year basis and the actions taken against them did not occur during the terms in which they had an expectation of continued employment.  Bachicha attaches a copy of his contract with APS.  *See* Exhibit A to Response [Doc. 54-1].  This contract provides, in pertinent part:

> The Employee shall be employed by the Board for a term of the fiscal year for the Albuquerque Municipal School District No. 12. . . . The Board and the Employee stipulate and agree that the Board may, in its sole discretion, transfer Employee to a different position within the District at any time during the term of this contract provided that the Employee's salary in any such position shall be at least the amount stated in Paragraph 7 below.

Exhibit A [Doc. 54-1], ¶ 1.

The actions taken by the Board were therefore well within the terms of the contract, and his pay was not reduced until the end of the 2009 school year.  Complaint, ¶ 76. Accordingly, the year-to-year contract does not provide Bachicha with a protectible property interest.

7

The inquiry does not end here, however, because the Due Process Clause of the Fourteenth Amendment also forbids the state to deprive a person of "liberty" without meaningful process. *Diehl v. Albany County School Dist.*, 694 F. Supp. 1534, 1535 (D. Wyo. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972)). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her], a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his [or her] name." *Lassiter v. Topeka Unified School Dist.*, 347 F. Supp.2d 1033, 1046 (D. Kan. 2004) (quoting *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir.), *cert. denied*, 543 U.S. 860 (2004)). This is known as "stigma-plus." "A liberty interest exists in favor of a public employee who is defamed by a state official in the course of termination or nonrenewal of employment. This is so even if the employee has no property right in the employment." *Diehl*, 694 F. Supp. at 1536 (citing *Roth*, 408 U.S. at 566-67).

To satisfy a liberty interest, or stigma-plus, claim, a plaintiff must show (1) that the statements impugned his/her good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or foreclosed other employment opportunities; and (4) the statements were published. *Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1308 (10th Cir. 2007). Each and every one of these elements must be shown. *Id.*

Stigma alone, *i.e.*, a defamatory statement, is insufficient to state a due process claim; there must be a tangible injury. *Phelps v. The Wichita Eagle-Beacon*, 886 F.2d 1262, 1268-69 (10th Cir. 1989) (damage to prospective employment too intangible to state a deprivation of property or liberty interest). "Due-process concerns may be implicated only

8

when the subject of the stigmatizing statement is denied a hearing to clear his or her name." *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004). Plaintiffs do not allege they requested and were denied a hearing.

Even if the Court were to find that each Plaintiff has been defamed, the undisputed facts show that both Plaintiffs retain their employment with APS to the present day. Thus, the crucial third element is missing from these liberty interest claims: Plaintiffs were not terminated from their employment and other employment opportunities were not foreclosed. For example, Stanojevic was offered the principalship at another high school, which she declined for personal reasons. Soto Affidavit, [Doc. 23-2], ¶ 4. Stanojevic Affidavit [Doc. 53-1] at ¶ 24. Her reasons are immaterial; the fact of the offer shows opportunities were not foreclosed. Stanojevic states she applied for six different principal positions and did not receive any promotions although she states she is qualified. The reasons for her being turned down are not in the record, save for her supposition that Defendants must have thwarted her advancement. Neither the failure to accept the position offered to her nor her claims she was denied other promotions trumps the fact that Stanojevic remains employed by APS.

In his Affidavit, Eduardo Soto indicates that a principalship at Rio Grande High School was available and Plaintiff Bachicha did not apply for this position, even though he was aware of the position. *Id*. at ¶ 7. Bachicha denies having knowledge of any available positions. This would be a factual dispute, but it is immaterial. Regardless of the availability of other employment and regardless of whether Bachicha availed himself of inquiring into other positions within APS, he remains employed by APS and there is nothing in the record to indicate that future employment in his current or other positions is foreclosed.

Both Plaintiffs allege their substantive due process rights were violated. "Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations 'without due process of law.'" *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1). "Under this framework, due process protections are accorded primarily to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* (internal quotation marks and citation omitted).

In extending these concepts to bar certain governmental actions "'regardless of the fairness of the procedures used to implement them,' the Supreme Court has emphasized 'that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 846 (1998)). In other words, the conduct must go beyond conduct covered by civil torts: "the 'constitutional concept of conscience shocking duplicates no traditional category of common-law fault.'" *Id.* (quoting *id.* at 848). Nothing the Plaintiffs have alleged rises to the level of a constitutional tort that shocks the conscience. *See, e.g.*, *Carone v. Mascolo*, 573 F. Supp.2d 575, 594 (D. Conn. 2008). Even if Plaintiffs were defamed, they have remedies through state tort law.

Equal Protection

Both Plaintiffs claim they were discriminated against on the basis of their respective genders in violation of their equal protection rights. Ms. Stanojevic argues that Brooks' comments about her "sleeping her way to the top" with former Superintendent Allison constitutes sex discrimination, and that her demotion and transfer constitute adverse employment actions, as does APS' denial of six promotions. Mr. Bachicha's bases his

10

equal protection claim on the fact that he objected to the discrimination directed at Ms. Stanojevic.

As for Ms. Stanojevic, her arguments show that she is making a "class of one" equal protection argument. "The Equal Protection Clause is concerned with governmental classifications that 'affect some groups of citizens differently than others,' especially those in 'an identifiable group.'" *Pignanelli v. Pueblo School Dist. No. 60*, 540 F.3d 1213, 1220 (10th Cir. 2008) (quoting *Engquist v. Oregon Dept. of Agriculture*, -- U.S. -- 128 S.Ct. 2146, 2152 (2008)). Class-of-one equal protection claims do not apply to public employees: to allow "such suits to proceed would 'completely invalidate the practice of public at-will employment.'" *Id.* (citing *id.* at 2151).

Mr. Bachicha's argument rests on his reading of *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). In that case, the Court held that a male coach who objected to the gender discrimination against his girls' basketball team had himself stated a claim for sex discrimination under Title IX. *Jackson* was not an equal protection case and this Court agrees with Defendants that to apply that holding to this case would constitute such a novel reading of *Jackson* that Defendants would be immune from suit because the law was not "clearly established." *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (to be clearly established, there must be Tenth Circuit or Supreme Court precedent on point).

<u>First Amendment</u>

Plaintiff Bachicha's First Amendment claim rests on his theory that he was retaliated against for advising Ms. Stanojevic of Brooks' comments about her and then assisting her in filing a charge of sex discrimination. First Amendment retaliation involves a five-step

analysis, but if the employee's speech is pursuant to his official duties, "then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Board of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009).

Mr. Bachicha was Ms. Stanojevic's supervisor. It is well within the realm of his supervisory authority to report to her Brooks' statement about her and to assist her in filing a charge of sex discrimination. If a plaintiff is speaking as an employee about personnel matters and not as a private citizen about matters of public concern, the speech is not cloaked in the First Amendment. *Lancaster v. Independent School Dist.*, 149 F.3d 1228, 1233-34 (10th Cir. 1998); *Arndt v. Koby*, 309 F.3d 1247, 1252-53 (10th Cir. 2002). That being the case, the Court finds there was no First Amendment violation.

In his Response, Bachicha argues that if his speech is not deemed protected under the First Amendment, then he should be allowed to amend his complaint to assert claims that Defendants denied him his right of association and petition under the First Amendment. Response at 24. He offers no facts, however, in support of these additional constitutional claims. The Court cannot fathom how Bachicha's rights of association or rights of redress were violated. Bachicha has no right to associate , *i.e.*, be employed with, any other teacher, *see, e.g.*, *Sanguigni v. Pittsburgh Bd. of Pub. Ed.*, 968 F.2d 393, 400 (3d Cir. 1992), and there is nothing in the record indicating that he was ever thwarted in petitioning a court of law. Absent some litany of facts of which the Court is unaware, Bachicha has no additional First Amendment retaliation claims.

<u>Conclusion</u>

Based on the foregoing, the Court finds that neither Plaintiff has alleged a violation of his or her constitutional or statutory rights. The Court has considered the parties' arguments and does not find that additional discovery would change this finding. None of the actions of Brooks and Maes warrant liability under 42 U.S.C. § 1983. Accordingly, Defendants Brooks and Maes are entitled to qualified immunity for the § 1983 claims.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment on Defendants Brooks' and Maes' Qualified Immunity [Doc. 22] is granted;

IT IS FURTHER ORDERED that Plaintiff Stanojevic's Motion and memorandum to Stay [Doc. 52] is denied.

IT IS SO ORDERED.

*Bruce D. Black*

Bruce Black
Chief United States District Judge