IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**MICHAEL BACHICHA** and **SUSAN
STANOJEVICH**,

              Plaintiff**s**,

v.                                           No. CIV 10-710 BB/LAM

**BOARD OF EDUCATION of the
ALBUQUERQUE PUBLIC SCHOOLS**,

              Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on a motion to dismiss certain claims, filed by

Defendant (Doc. 114), as well as a motion by Plaintiffs for leave to file an amended complaint

(Doc. 113), followed by another motion to amend by Plaintiff Bachicha (Doc. 125).  The Court

has considered the submissions of the parties and the applicable law, and for the reasons stated

below will deny the motions to amend as unnecessary, and will grant in part and deny in part the

motion to dismiss.

        **Facts and Procedural Background**

Plaintiffs are both employed by Defendant ("APS") in administrative positions.  They

were each transferred from Sandia High School ("SHS") to other schools in the APS system, and

each filed suit against APS.  Their claims were brought under Title VII, 42 U.S.C. §§ 2000e to

2000e–17, as well as 42 U.S.C. § 1983.  Individual Defendants originally named in the suit filed

a motion for summary judgment requesting qualified immunity from the § 1983 claims, and this

Court granted that relief in an earlier opinion.  [Doc. 66]  Subsequently the individual

Defendants were dismissed from the case by agreement of the parties.  [Doc. 99]  Defendant has

now filed a Rule 12(b)(6) motion to dismiss additional claims.  In response to that motion as well as to earlier rulings and pleadings filed in this case, Plaintiffs have filed the two motions to amend referenced above.  The Court will first address the motion to dismiss and then will take up the motions to amend.

**Motion to Dismiss**

**A.  Materials to Be Considered in Ruling on the Motion:**  Defendant's motion is directed at Plaintiff's complaint and is a motion to dismiss for failure to state certain claims in a legally sufficient manner.  Normally, in considering such a motion the Court is limited to a review of the allegations made in the complaint, and may not consider matters outside the four corners of that document.  *See Archuleta v. Wagner*, 523 F.3d 1278*,* 1281 (10th Cir. 2008).  Defendant strenuously argues for such limited consideration, and faults Plaintiffs for filing affidavits with their responses to the motion and for attempting to add facts to their complaint.  This case is unusual, however, because the motion to dismiss was not filed early in the proceedings.  Instead, as pointed out above, a motion for summary judgment has already been filed and decided, and the parties have made evidentiary submissions in connection with that motion.  Where such factual development has occurred, it is not efficient or fair to ignore it and turn back the clock, so to speak, for purposes of ruling on a motion to dismiss.  *See, e.g., Rhodes v. Robinson*, 612 F.2d 766, 772-73 (3d Cir. 1979) (reversing district court's dismissal of a complaint because court should have considered entire record, including plaintiff's summary-judgment submissions, in deciding whether allegations of complaint were vague and conclusory).

It is an accepted principle that in addressing a motion for summary judgment, a court should where feasible review the entire record, including evidence submitted in connection with unrelated pleadings, to determine whether the motion is meritorious.  *See, Downes v. Beach*, 587

F.2d 469, 471-72 (10th Cir. 1978); *Sinclair v. Mobile 360, Inc.*, 417 Fed.Appx. 235, 242-43 (4th

Cir. 2011) (discussing prior Fourth Circuit case, *Campbell v. Hewitt, Coleman & Assocs.*, 21

F.3d 52 (4th Cir. 1994)); *Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565, 1570 (11th Cir.

1987).  The Court sees no reason the same principle should not apply to later-filed motions to

dismiss such as this one; evidentiary submissions already in the record should be consulted while

the Court is analyzing the complaint to determine whether it states a particular claim.

Furthermore, where as here a party has submitted evidentiary materials in response to a motion

to dismiss, a court may convert the motion to a motion for summary judgment and take those

materials into account in deciding the motion.  *See Whitesel v. Sengenberger*, 222 F.3d 861, 866

(10th Cir. 2000).[1]   In sum, whether the action is characterized as supplementing the complaint

with evidentiary materials already in the record, or converting the motion to dismiss to a motion

for summary judgment, the Court will not limit its review to the allegations of the complaint but

will instead take into consideration the affidavits that are already part of the record due to their

submission during the parties' summary-judgment briefing.

**B. Plaintiff Bachicha's Retaliation Claim:** Mr. Bachicha claims he was transferred in

retaliation for complaints to his superiors about gender discrimination or harassment directed

against Plaintiff Stanojevic.  "In order to establish a prima facie case of retaliation, an employee

must show that: '(1) [he] engaged in protected activity; (2) [he] suffered an adverse employment

---

[1]The Court recognizes that before taking such action, the opposing party should be notified to give it an opportunity to address the extra-complaint materials the Court will be considering. *See Whitesel.*  In the unusual circumstances of this case, however, such notification is not necessary because Defendant has already had an opportunity to address those materials. The affidavits submitted by Plaintiffs with respect to the motion to dismiss are substantially similar to the affidavits they attached to their summary-judgment briefs.  Defendant had an adequate opportunity to respond to those affidavits during the summary-judgment process.  For this reason, the Court will not delay resolution of the motion to dismiss but will limit its consideration to the affidavits submitted in connection with the summary-judgment proceedings rather than those attached to the motion-to-dismiss response briefs.

action; and (3) there was a causal connection between the protected activity and the adverse action.'" *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122-23 (10th Cir. 2007).  Defendant focuses on the first requirement, and maintains Mr. Bachicha's retaliation claim must be dismissed because he did not engage in any conduct protected by Title VII.  Defendant makes several arguments in support of this assertion.

Defendant's first argument is based on the difference between "participation" and "opposition" for Title VII purposes.  Courts have separated Title VII's anti-retaliation clause into two parts:  a participation clause and an opposition clause.  *See, e.g., E.E.O.C. v. Total System Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000).  The participation clause prohibits an employer from retaliating against an employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (a).  Defendant contends Plaintiff Bachicha at most participated in an in-house process, after Plaintiff Stanojevic filed an internal complaint.  According to Defendant, the participation clause applies only to federal EEOC or state Human Rights Commission proceedings, and is not triggered by participation in an internal process.  This position has some support in the case law.  *See Total System Servs.* (participation clause applies only to "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC" and not to an in-house, informal proceeding); *see also Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 747 (7th Cir. 2010).  The Tenth Circuit has not yet taken a position on this issue.  Due to the Court's resolution of Defendant's other arguments, the Court similarly refrains from deciding the question.

Defendant's next argument is based on the opposition clause, which prohibits retaliation against any employee who has "opposed any practice made an unlawful employment practice by [Title VII]".  42 U.S.C. § 2000e-3(a).  Defendant contends the only opposition Plaintiff Bachicha

engaged in was a private conversation with Plaintiff Stanojevic.  In that conversation he

informed Stanojevic of derogatory comments allegedly made about her by the APS

Superintendent, Mr. Brooks.  If Defendant's characterization of Plaintiff Bachicha's allegations

were accurate, Defendant would prevail on this argument.  It should be obvious that a private

conversation between two employees, which is not communicated to the employer, cannot be the

basis of a retaliation claim under Title VII.  This is so because an employer cannot retaliate for a

conversation if it is not aware of that conversation in the first place.  *See, e.g., Williams v. Rice*,

983 F.2d 177, 181 (10th Cir.1993) ("To establish a causal connection, plaintiff must show that

the individual who took adverse action against him knew of the employee's protected activity.").[2]

According to Plaintiff Bachicha's submissions, however, he did much more than merely

have a private conversation with Plaintiff Stanojevic.  [Doc. 54, Exh. 1] He first complained

about the alleged comment by Mr. Brooks to one of his superiors, Mr. Soto, who was an

Associate Superintendent for APS.  During this conversation he essentially informed Mr. Soto

that he would tell Plaintiff Stanojevic about the alleged comment.  [*Id.*] After she was informed

of the comment, Plaintiff Stanojevic filed an internal complaint with the APS Office of Equal

Opportunity ("OEO"), and in this complaint she named Mr. Brooks as a witness and recited his

alleged comment.  Furthermore, Mr. Brooks and Mr. Soto allegedly both knew of Plaintiff

Bachicha's role in the communication of the comment to Plaintiff Stanojevic.  Mr. Soto knew

because he was allegedly told as much by Plaintiff Bachicha.  It can be inferred that Mr. Brooks

knew because he allegedly got into a heated discussion with Plaintiff Bachicha about the subject.

---

[2]The Court does not necessarily agree, however, with Defendant's apparent suggestion
that a private conversation between two employees can never be the basis of an opposition-
clause retaliation claim, even if that conversation is later communicated to the employer.  For
example, if an employee perceives a Title VII violation, discusses that violation with the affected
co-employee, and encourages that employee to take legal action, it seems to the Court that the
opposition clause could be implicated.

[*Id.*]  In sum, there is evidence that Plaintiff Bachicha made his objections known not just to his

co-employee, Plaintiff Stanojevic, but to upper management of APS in the persons of Mr. Soto

and Mr. Brooks.  Defendant's private-conversation argument, therefore, must be rejected at this

stage of the proceedings.[3]

Defendant's next argument is also based on the opposition clause.  Defendant argues,

correctly, that protected opposition cannot simply be a complaint about mistreatment of an

employee.  Instead, the complaint must somehow reference gender discrimination, so the

employer can understand the complaint concerns issues governed by Title VII and not simply

generalized allegations of unfair actions by the employer.  This is because Title VII is not a

guarantor of workplace fairness or rational conduct; instead, it protects only against illegal

discrimination on the basis of protected status.  *See, e.g., Petersen v. Utah Dep't of Corrections*,

301 F.3d 1182*, 1188-89 (10th Cir. 2002).  In other words, if Plaintiff Bachicha was complaining

only that Mr. Brooks was being rude or unfair, those complaints were not protected by Title

VII's anti-retaliation provision.  *See id.*  On the other hand, if Defendant knew that Plaintiff

Bachicha believed gender discrimination was involved in Mr. Brooks' statement or his attitude

toward Plaintiff Stanojevic, then his complaints about Mr. Brooks do constitute protected

conduct under Title VII.  *See id.*

At this point it is too early to determine whether Plaintiff Bachicha adequately

communicated that he was complaining about gender discrimination, as opposed to "plain

vanilla" unfair treatment of a co-employee.  *See id.* (complaints about plain-vanilla rudeness or

---

[3]It should be noted that nothing in this opinion forecloses further factual development
that could change any of the legal analyses presented herein.  The opinion is based on the
complaint and the limited factual presentations that are available at this point.  Subsequent
summary-judgment proceedings, however, may result in different results for any of the points
made in the opinion.

unfair treatment do not give rise to retaliation claim under Title VII).  On the one hand, as the

Court has pointed out in a previous opinion, accusations of sexual misconduct do not

automatically constitute discrimination on the basis of gender; instead, they can merely be

personal attacks on the character of an employee.  As analogous case law puts it, discrimination

on the basis of sexual affiliations (such as affairs) is not gender discrimination.  *See, e.g., Parker*

*v. Salazar*, 431 Fed.Appx. 697, 698-99 (10th Cir. 2011) (employee's complaint about two

coworkers' flaunting of their affair was not protected conduct under Title VII); *Taken v.*

*Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369-70 (10th Cir. 1997) (employees who were

denied promotion, allegedly because supervisor promoted his paramour, did not state claim for

gender discrimination).

On the other hand, it is entirely possible Plaintiff Bachicha perceived the comment to be

based on stereotypes arising out of gender discrimination, and communicated that perception to

either Mr. Soto or Mr. Brooks.  In the Court's experience it is exceedingly rare for a man to be

accused of sleeping his way to the top; accusations that a person has traded sexual favors in

exchange for a promotion, or a part in a movie, for example, are almost entirely directed at

women.  *See, e.g., McDonnell v. Cisneros*, 84 F.3d 256*,* 259 (7th Cir. 1996); *Girolamo v.*

*Teamsters Local 72,* 1998 WL 889039 (S.D.N.Y. 1998, unpublished); *but cf. Winsor v. Hinckley*

*Dodge, Inc.,* 79 F.3d 996, 1001 n.1 (10th Cir. 1996) (implying males could be victims of rumors

that they succeeded due to "special relationship" with superior).   It would have been reasonable

for Plaintiff Bachicha to perceive the comment in that light, and to object to it on that basis

rather than as an attack on Plaintiff Stanojevic's morals or her competence as an administrator.

Further factual  development will shed light on Plaintiff Bachicha's actual beliefs and whether

he communicated those beliefs to Defendant during his complaints; at this point, drawing all

inferences in his favor, the Court finds Plaintiff Bachicha has raised a viable issue as to whether his complaints to management concerned gender discrimination.

Defendant's final argument is that Plaintiff Bachicha's alleged complaints to Mr. Soto and Mr. Brooks are not protected under Title VII because he could not have reasonably believed the comment supposedly made by Mr. Brooks was a violation of Title VII. As Defendant points out, not all complaints of discrimination are protected under Title VII's retaliation provision. Instead, an employee's complaints about certain conduct by the employer can support a retaliation claim only if the complainant possessed a good-faith and reasonable belief that the complained-of conduct violated Title VII. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Put another way, an unreasonable belief that a Title VII violation has occurred will not protect an employee from retaliation if the employee complains about the conduct. *See id.; see also Robinson v. Cavalry Portfolio Servs., LLC*, 365 Fed.Appx. 104, 113-14 (10th Cir. 2010) (no reasonable person could believe a single racist remark by a co-employee would constitute a Title VII violation, so complaint about the comment was not protected conduct).

Defendant attempts to analogize this case to *Breeden, Robinson,* and other similar cases, by arguing that Mr. Brooks' sleeping-to-the-top comment was a single statement that was not clearly related to gender discrimination and was not even made in front of Plaintiff Stanojevic. Therefore, concludes Defendant, no reasonable person could believe the comment created a hostile work environment. Again, however, Defendant has construed Plaintiff Bachicha's allegations too narrowly. The most serious manner in which to view those allegations is that Plaintiff Bachicha believed Mr. Brooks was stunting Plaintiff Stanojevic's professional advancement, due to a sexist belief that she had slept her way to the top and had not been promoted on her own merits. While the Court agrees Mr. Brooks' one comment, standing alone, could not constitute a hostile work environment actionable under Title VII, denying professional

advancement such as promotions due to gender-related discrimination would certainly violate

the statute.  To the extent Plaintiff Bachicha believed this was happening, it is undeniable that he

could have reasonably believed a violation of Title VII had occurred.  In essence, the Court

disagrees with Defendant's attempt to limit Plaintiff Bachicha's belief to the hostile-work-

environment context, when it is entirely possible his belief arose out of the adverse-employment-

action area of Title VII law.  In the latter, of course, all it takes is one denial of promotion to give

rise to a violation of the statute.  For this reason, the Court finds Defendant's argument

unpersuasive, at least given the current state of the record.[4]

     **C.  Plaintiff Stanojevic's Gender-Discrimination Claim:**  Plaintiff Stanojevic

maintains she suffered a hostile work environment because of her gender.  She claims she

suffered the following types of harassment:  (1) False statements made by a "disgruntled

employee" to Mr. Brooks; (2) The statement by Mr. Brooks, presumably based on

misinformation provided by the disgruntled employee, that she was involved in an intimate

relationship with the former Superintendent and thereby "slept her way to the top"; (3) Other

false allegations made about Plaintiff Stanojevic, including charges that she had overstepped her

bounds as Assistant Principal and was running the school; (4) The statement by Mr. Brooks to

Plaintiff Bachicha, to the effect that Plaintiff Stanojevic had made a serious error in judgment by

---

[4]The Court recognizes Defendant's argument that Plaintiff Bachicha is attempting to
change his theory of the case and should not be allowed to do so.  According to Defendant,
Plaintiff Bachicha should be limited to arguing that he believed Mr. Brooks' comment was an
example of harassment, and therefore should be required to show a hostile work environment
existed.  At this early stage of the proceedings, however, a plaintiff merely presents allegations
and evidence, and the Court then determines whether a viable cause of action exists.  This
determination is not limited to a particular legal theory argued by any party.  As the Supreme
Court has stated in a different context, "[w]hen an issue or claim is properly before the court, the
court is not limited to the particular legal theories advanced by the parties, but rather retains the
independent power to identify and apply the proper construction of governing law." *Kamen v.
Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) The Court
therefore disagrees with Defendant's contention.

naming him as a witness in her internal OEO complaint; (5) Plaintiff Stanojevic's transfer to another high school, at the same pay but with less desirable job duties and a more limited opportunity for promotion; and (6) Defendant's repeated failures to promote Plaintiff Stanojevic to a principal position.

In order to sustain a claim for a gender-based hostile work environment, a plaintiff must show that, viewing the evidence in the light most favorable to her, the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir.2007). In making that determination, the Court must consider factors such as the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Harsco Corp. v. Renner,* 475 F.3d 1179, 1187 (10th Cir. 2007). It is not enough to demonstrate a few isolated incidents of gender-based enmity or sporadic gender-based slurs. *See Winsor v. Hinckley Dodge, Inc., supra*, 79 F.3d at 1001. Instead, there must be a steady barrage of opprobrious gender-based comments or actions. *See Herrera, supra*, 474 F.3d at 680. Significantly, the plaintiff must also show that the mistreatment she suffered was due to her gender rather than some other cause such as personal animosity. *See id.*

The primary problem Plaintiff Stanojevic faces is that almost none of the harassing actions she points to have any obvious connection to gender at all. The only incident that might possibly implicate the issue of gender is the "sleeping to the top" comment allegedly made by Mr. Brooks. Even that comment, however, as the Court has pointed out above, does not automatically indicate gender bias; rather, it can be viewed as a comment on Plaintiff Stanojevic's alleged sexual affiliations rather than her gender. *See, e.g., Parker v. Salazar*,

*supra*, 431 Fed.Appx. at 698-99.  Absent some additional information tending to show Mr. Brooks was biased against women in general, or against certain types of women in general, rather than holding a personal animosity against Plaintiff Stanojevic, it is difficult to categorize this incident as an example of gender-based harassment.  For purposes of this opinion, however, drawing all inferences in favor of Plaintiff Stanojevic, the Court will consider the comment to be gender-based.  None of the other incidents relied on by Plaintiff Stanojevic, however, in and of themselves bear any indication of gender bias.

As Plaintiff argues, the lack of gender-bias overtones does not necessarily mean an incident cannot be regarded as part of a pattern of gender-based harassment.  *See, e.g., Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1172 (10th Cir. 2007) (even when workplace actions are not on their face discriminatory, if there is other evidence of discriminatory conduct, a jury may reasonably infer that seemingly non-discriminatory actions were in fact motivated by discriminatory animus); *see also Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir.2005). However, in order for facially non-gender-based conduct to be so tainted, the other conduct at issue must be overtly discriminatory.  *See Chavez.*  In this case we have one ambiguous comment that, giving Plaintiff Stanojevic the benefit of the doubt, the Court will consider to be gender-based.  However, this comment is not sufficiently overtly discriminatory to sweep in all of the other facially non-discriminatory actions into the category of gender harassment.  For example, Plaintiff Stanojevic complains that she was turned down for a number of positions as principal of various schools in the APS system.  However, she has not alleged or presented any facts indicating males rather than females were placed into these open positions in her stead.  In the absence of such evidence, or other evidence tending to raise an inference of gender-based discrimination, the Court cannot presume the denials of promotions were a result of gender bias simply because Mr. Brooks accused Plaintiff Stanojevic of sleeping her way to the top.  The

same is true of the allegedly unwarranted criticisms of her performance as assistant principal of

curriculum at Sandia High School, and of her transfer from that school to a less desirable

position at Eldorado High.  The one possibly gender-related comment by Mr. Brooks cannot bear

the weight Plaintiff would place on it.

At this point, then, the only possible instance of gender-related harassment would be the

comment made by Mr. Brooks, which was not made to Plaintiff Stanojevic or in any setting

where she could have overheard it.  While the comment, if made, was certainly distasteful,

standing alone it cannot be said to have permeated the work environment with gender-related

harassment to the extent that it can support a hostile-work-environment claim.  For that reason,

summary judgment will be granted on this claim.[5]  The Court recognizes Plaintiff's retaliation

claim remains extant, as Defendant has not attempted to address that claim at this point in the

proceedings.

**Motions for Leave to File Amended Complaints**

**A.  Motion to Amend to "Clarify" Claims for Emotional-Distress Damages:**

Plaintiffs have filed a motion to amend that is obviously directed at a prior ruling entered by this

Court.  In that opinion [Doc. 95] the Court erroneously stated as follows:  "Plaintiffs concede

they can recover neither emotional or punitive damages under Title VII."  The Court therefore

dismissed the claims for both emotional-distress damages and punitive damages.  In fact,

Plaintiffs had conceded only that they could not recover punitive damages under Title VII.

Apparently Plaintiffs did not immediately notice this error on the part of the Court, because they

---

[5]The Court has considered Plaintiff Stanojevic's request that she be allowed to amend her
complaint rather than have this claim dismissed.  Since the Court is taking into account the
additional facts alleged by Plaintiff Stanojevic in her affidavit, the Court does not see fit to grant
an opportunity to amend to add still more facts.  Plaintiff Stanojevic has had an ample
opportunity to present her version of the facts, and that version is not enough to support a claim
for a gender-bias-based hostile work environment.

did not immediately move for reconsideration on that point. Instead, after waiting several months, they filed the instant motion to amend. The Court is constrained to point out that a motion to amend the complaint is not an appropriate or procedurally efficient means of addressing either a ruling made by the Court or a legal argument raised by the opposing party. If a complaint is amended, that necessitates yet another responsive pleading from the opposing party in the form of an answer, and has the potential to significantly confuse the scheduling of different aspects of a case. The Court will therefore deny the motion to amend as presented by Plaintiffs.

That being said, it is apparent the Court's prior ruling was based on the Court's misreading of the record. Defendant did not even address emotional-distress damages under Title VII in its motion to dismiss. [Doc. 71] For that reason, Plaintiffs had no reason to respond to the issue, and the Court's statement that Plaintiffs had conceded the issue was simply wrong, as was the Court's ruling relying on that statement. Furthermore, the applicable statutes and case law both make it clear that emotional-distress damages may be recovered in an action brought under Title VII, and Defendant does not argue to the contrary. 42 U.S.C. § 1981a; *see, e.g., McInerney v. United Air Lines, Inc.*, 463 Fed.Appx. 709, 723 (10th Cir. 2011) (affirming award of emotional-distress damages in Title VII case). Despite the Court's mistake and the clear state of the law, Defendant now asks the Court to hold fast to its error, making three arguments. Defendant first points out that the Court has already ruled on the issue. That is obvious, but overlooks the fact that a Court can alter interlocutory rulings such as this one, especially erroneous ones, at any time prior to a final decision on the case. *See Fye v. Oklahoma Corp. Comm'n,* 516 F.3d 1217, 1223 n.2 (10th Cir. 2008).

Defendant next argues that Plaintiffs' motion is untimely, and they should have filed a motion for reconsideration rather than a motion to amend the complaint. Again, the Court can

13

change its interlocutory rulings at any time during the pendency of the case, so the timeliness

objection is not persuasive. Furthermore, although the Court has already pointed out that the

motion to amend is procedurally inappropriate, the Court is not willing to stubbornly cling to an

erroneous ruling by relying on the fact that counsel may have chosen the wrong vehicle to

attempt to correct that error.[6]

Defendant's third argument is that the motion to amend is futile because Plaintiff

Stanojevic has not stated a viable hostile-work-environment claim and Plaintiff Bachicha has not

stated a viable retaliation claim. The Court notes this argument would not resolve the emotional-

distress question with regard to Plaintiff Stanojevic's retaliation claim. In any event, Plaintiff

Stanojevic's hostile-work-environment claim will in fact be dismissed, as discussed above, and

the emotional-distress issue is therefore moot as to that claim. With respect to both parties'

retaliation claims, the Court will construe Plaintiffs' motion to amend as a motion for

reconsideration, and will reinstate the claims for emotional-distress damages under Title VII. To

the extent the motion remains titled a motion to amend, however, it will be denied as

unnecessary.

**B. Plaintiff Bachicha's Third Motion to Amend:** Plaintiff Bachicha has filed a motion

to amend his complaint in response to Defendant's motion to dismiss his retaliation claim. This

is in addition to attaching affidavits to his response brief. Again, the Court points out it is not

desirable procedurally to attempt to amend a complaint to respond to legal arguments made by

---

[6]The Court would point out that counsel for Defendant has missed an excellent
opportunity to demonstrate professionalism in the litigation of this case. The professional course
of conduct for counsel would have been to acknowledge the Court's error and concede that the
motion previously ruled on by the Court did not address Title VII emotional-distress damages.
Counsel could then have limited the discussion to the futility argument, which after all is the
only one that had any possibility of succeeding. Counsel should have known there is no chance
a competent federal judge would commit a clear error and then rely on procedural defaults as a
basis for refusing to rectify the mistake.

the opposing party, or to rulings of the Court.  The more appropriate procedural maneuver would have been to attach the affidavits and ask the Court to treat the motion as a summary-judgment motion, as the Court has done *sua sponte*.  This would avoid the difficulties presented by multiple amended complaints.  Since the Court has considered affidavits already in the record and will deny the motion to dismiss, Plaintiff Bachicha's motion to amend will be denied as unnecessary.

**Conclusion**

Based on the foregoing discussion, Defendant's motion to dismiss certain claims (Doc. 114) will be granted in part and denied in part, and Plaintiff Stanojevic's hostile-work-environment claim will be dismissed.  In addition, Plaintiffs' motions to amend the complaint (Docs. 113, 125) will be denied as unnecessary.

Dated this 26th day of June, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE