**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
_____

**MICHAEL BACHICHA** and **SUSAN**
**STANOJEVICH**,

          Plaintiffs,

v.                                        No. CIV 10-710 BB/LAM

**BOARD OF EDUCATION of the**
**ALBUQUERQUE PUBLIC SCHOOLS**,

          Defendant.


**MEMORANDUM OPINION**

THIS MATTER comes before the Court on a motion for partial summary judgment filed by Plaintiff Michael Bachicha.  [Doc. 167]  The Court has considered the submissions of the parties and the applicable law, and for the reasons stated below will deny the motion.

The Court has issued a number of opinions in this case already, and the parties are well aware of the factual and procedural history of the case.  For that reason the Court will dispense with yet another recitation of the same.

**Standard of Review**

Since the 2010 amendments to Rule 56 of the federal rules of civil procedure, a motion for partial summary judgment has been explicitly authorized by that Rule.  *See* Fed. R. Civ. P. 56(a).  The standard for granting or denying such a motion is the same as that applied to any motion for summary judgment.  *See id.*, advisory committee's notes (2010 Amendments). Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See  EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir.2011).  In reviewing a motion for summary

judgment, the evidence must be considered in the light most favorable to the non-moving party. *See id.* In addition, all reasonable inferences from the evidence must be drawn in favor of the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Materials that may be considered for purposes of summary judgment include depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, and other materials. Fed. R. Civ. P. 56(c)(1)(A).

**Discussion**

Plaintiff Bachicha's motion is directed at one aspect of his Title VII retaliation claim. "In order to establish a prima facie case of retaliation, an employee must show that: '(1) [he] engaged in protected activity; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.'" *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122-23 (10th Cir. 2007). The motion for partial summary judgment asks the Court to conclusively determine the first of these elements -- that Plaintiff engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-(3)(a) (retaliation clause of Title VII).

As the Court has  discussed in a previous opinion [Doc. 170] this inquiry implicates two different issues. First, Plaintiff must have had a good-faith and reasonable belief that the conduct about which he was complaining constituted a violation of Title VII. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001); *Crumpacker v. Kansas Dep't of Human Resources*, 338 F.3d 1163, 1171 (10th Cir. 2003). In addition, Plaintiff must have communicated to his employer the fact that he was protesting what he believed to be gender discrimination of some sort, rather than simply rudeness, discourtesy, or personal animosity. *See, e.g., Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002). As the Court previously put it, "[i]n other words, if Plaintiff Bachicha was complaining only that

2

Mr. Brooks was being rude or unfair, those complaints were not protected by Title VII's anti-retaliation provision." (Doc. 170, citing *Petersen*).  Plaintiff asserts he has established both of these requirements as a matter of undisputed fact – that he reasonably believed Mr. Brooks had spoken and acted in a way that violated Title VII, and that he communicated that belief to Mr. Soto or, indirectly, to Mr. Brooks, in a way that made it apparent he was raising the issue of gender discrimination.

        Contrary to Plaintiff's assertion, the Court finds there are genuine issues of material fact concerning both what he believed at the time he made his complaints to Assistant Superintendent Soto, and whether his complaints to Mr. Soto implicated Title VII even tangentially.  A discussion of just a few of the evidentiary submissions relied on by Plaintiff supports such a conclusion.  For example, Plaintiff points to the contents of an employee guide to sexual harassment published by the Albuquerque Public Schools ("APS") and presumably distributed to APS employees.  This guide does indeed indicate that making remarks about a person's sexual activity, or spreading rumors about a person's sex life (both of which Mr. Brooks admittedly did, in one fell swoop), are examples of sexual harassment.  [Doc. 167-7]  However, the Court has not been directed to any deposition excerpt or affidavit in which Plaintiff indicates he was aware of these specific provisions of the employee guide at the time he was subjected to Mr. Brooks' comments about Ms. Stanojevic and complained about those comments.  Absent such a connection, these provisions of the guide say little about Plaintiff's beliefs.[1]

---

        [1]Unlike Defendant, the Court does not discount the relevance of the provisions merely because the employee guide's descriptions of sexual harassment are not congruent with Title VII law.  If a layperson is informed in training, or in an employee manual, that certain conduct could constitute sexual harassment and that sexual harassment is "against the LAW" [Doc. 167-7], it seems logical that this would have an impact on the reasonableness of an individual's beliefs that unlawful discrimination has occurred.  In other words, if a seemingly authoritative source such as an employee guide or an attorney states to a layperson that a type of conduct is illegal harassment, it would appear difficult to hold that the layperson's belief to that effect is not reasonable or in good faith.

3

Plaintiff also points to the internal complaint filed by Ms. Stanojevic, ostensibly at Plaintiff's urging.  It should be noted, however, that this complaint is directed at an individual named Ron Allen, rather than Mr. Brooks, and accuses Mr. Allen of spreading the rumor that Ms. Stanojevic had slept her way to the top.  [Doc. 189-1]  The complaint does not raise an allegation that Mr. Brooks was hindering Ms. Stanojevic's career due to discrimination, although it does contain a general statement that the "slept to the top" rumor had damaged her "personally and professionally."  [*Id.*]  In sum, if this complaint is viewed in a light most favorable to Defendant rather than Plaintiff, it actually supports an inference that Plaintiff's conversation with Ms. Stanojevic was not focused on possible discrimination by Mr. Brooks, but rather was directed at Ron Allen's alleged threats and activities.

The most vivid example of a factual dispute that precludes the grant of partial summary judgment is the differing accounts provided by Plaintiff and Mr. Soto regarding the telephone conversation that ensued following Mr. Brooks' sleeping-to-the-top statement.  Plaintiff contends he made it plain to Mr. Soto that he believed Mr. Brooks was discriminating against Ms. Stanojevic, due to Mr. Brooks' gender-bias-based belief that Ms. Stanojevic had advanced her career by sleeping with former Superintendent Allison and, perhaps, Plaintiff himself.

Although Plaintiff has presented some evidence supporting this version of the telephone call, the Court emphasizes again that the evidence must be viewed in the light most favorable to Defendant, and all inferences from that evidence must be drawn against Plaintiff.  Defendant has submitted evidence, principally from Mr. Soto, to the effect that during the telephone call Plaintiff did not mention black-balling or harassment, and said only that he was "bothered" by the comments made by Mr. Brooks.  [Doc. 167-3, pp. 30-31; Doc. 176-6]  For purposes of this opinion, the Court must presume this was the extent of Plaintiff's complaints during the telephone call – expressions of personal distaste with, or discomfort about, Mr. Brooks' act of dredging up old rumors about Ms. Stanojevic, as well as his suggestion or inquiry as to whether

4

Plaintiff himself might be involved in an affair with her.  As the Court has already discussed, Title VII does not protect such expressions of personal disagreement if they are not connected to some type of discrimination proscribed by that statute.  Furthermore, from Mr. Soto's version of the telephone call as well as Plaintiff's description of his reaction to Mr. Brooks' comment, it can be inferred that while Plaintiff believed Mr. Brooks' attitude toward Ms. Stanojevic was unfair, baseless, and worthy of contempt, the fact that it might violate Title VII did not occur to him at the time.[2]  Again, for purposes of this opinion that is the inference the Court must draw, and therefore a genuine issue of material fact is raised as to Plaintiff's beliefs at the time he made the telephone call to Mr. Soto.

**Conclusion**

As discussed above, genuine issues of material fact exist both as to Plaintiff's beliefs at the time he engaged in the allegedly protected conduct, and as to whether his protestations and actions adequately notified Defendant of a possibility that gender discrimination was at issue. Therefore, Plaintiff's motion for partial summary judgment [Doc. 167] will be denied.

Dated this 1st day of October, 2012.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[2]It should be noted that what is important in this case is what Plaintiff believed at the time he engaged in his allegedly protected conduct.  *See Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1016 (10th Cir. 2004).  If he arrived at other conclusions after he had already engaged in that conduct, such after-the-fact beliefs are irrelevant to the issue at hand.  This is because the Title VII retaliation clause protects individuals who act out of a reasonable, good-faith belief that they have witnessed a violation of the law.  Logically, then, it does not protect those individuals who act out of some other motive but then, in retrospect, decide some type of prohibited discrimination might have occurred.